EXHIBIT A

JOHN M. AGNELLO (jagnello@carellabyrne.com)
MELISSA E. FLAX (mflax@carellabyrne.com)
CHRISTOPHER J. BUGGY (cbuggy@carellabyrne.com)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973)994-1700
*Attorneys for Plaintiff, Cambridge Pavers, Inc.*

| | |
|---|---|
| CAMBRIDGE PAVERS, INC., | : SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION:BERGEN COUNTY |
| Plaintiff, | : DOCKET NO. BER-L- |
| | : |
| v. | **COMPLAINT** |
| | : **AND** |
| LIBERTY INSURANCE | **JURY DEMAND** |
| CORPORATION, LIBERTY MUTUAL | : |
| FIRE INSURANCE COMPANY, LM | |
| INSURANCE CORPORATION, THE | : |
| CHARTER OAK FIRE INS. CO. and THE | |
| TRAVELERS INDEMNITY CO. of | |
| AMERICA, | |
| | |
| Defendant. | |

Plaintiff Cambridge Pavers, Inc. ("Cambridge"), by and through its attorneys Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., by way of Complaint against Defendants, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, The Charter Oak Fire Ins. Co. and The Travelers Indemnity Co. of America, hereby states as follows:

## PARTIES

1.      Cambridge is a corporation organized under the laws of the State of New Jersey, with its principal place of business located at Jerome Avenue, Lyndhurst, New Jersey 07071. Cambridge's business began in 1995 and includes the manufacture and sale of concrete paving stone products in the State of New Jersey and in other states.

2.      Upon information and belief, Defendant Liberty Insurance Corporation ("LIC") is a corporation organized under the laws of the State of Illinois, with its principal place of business located at 2815 Forbs Avenue Suite 200, Hoffman Estates, Illinois 60192.

3.      Upon information and belief, LIC is licensed to do business in the State of New Jersey.

4.      Upon information and belief, Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual Fire") is a corporation organized under the laws of the State of Wisconsin, with its principal place of business located at 2000 Westwood Drive, Wausau, Wisconsin 54401.

5.      Upon information and belief, Liberty Mutual Fire is licensed to do business in the State of New Jersey.

6.      Upon information and belief, LM Insurance Corporation ("LMI") is a corporation organized under the laws of the State of Illinois, with its principal place of business located at 2815 Forbs Avenue Suite 200, Hoffman Estates, Illinois 60192.

7.      Upon information and belief, LMI is licensed to do business in the State of New Jersey.

8.      Upon information and belief, LIC, Liberty Mutual Fire and LMI are affiliated with Liberty Mutual Group.

9.      LIC, Liberty Mutual Fire and LMI are referred to herein collectively as "Liberty".

10. Upon information and belief, The Charter Oak Fire Ins. Co. ("Charter Oak") is a corporation organized under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut 06183-6014.

11. Upon information and belief, Charter Oak is licensed to do business in the State of New Jersey.

12. Upon information and belief, The Travelers Indemnity Co. of America ("Travelers Indemnity") is a corporation organized under the laws of the State of Connecticut, with its principal place of business located at with its principal place of business located at One Tower Square, Hartford, Connecticut 06183-6014.

13. Upon information and belief, Travelers Indemnity is licensed to do business in the State of New Jersey.

14. Upon information and belief, Charter Oak and Travelers Indemnity operate as subsidiaries of The Travelers Indemnity Company.

15. Charter Oak and Travelers Indemnity are referred to herein collectively as "Travelers".

## NATURE OF THE ACTION

16. The within action seeks a declaratory judgment confirming Defendants' obligations to defend and indemnify Cambridge under policies of insurance issued by Defendants to Cambridge. The action also seeks compensatory damages for Defendants' breach of the insurance contracts they issued to Cambridge and for breach of the implied covenant of good faith and fair dealing associated with those insurance contracts.

## FACTS COMMON TO ALL COUNTS

17.     On or about January 13, 2017, EP Henry Corporation ("EP Henry") filed a lawsuit against Cambridge entitled *EP Henry Corporation v. Cambridge Pavers, Inc.*, Superior Court of New Jersey, Bergen County (the "Underlying Action"). The Underlying Action was removed to the United States District Court, District of New Jersey and bears Civil Action No. 1:17-cv-1538(JBS)(KMW).

18.     The Underlying Action alleges, among other things, that Cambridge's advertising is false and misleading in violation of the Lanham Act, 15 U.S.C. §1125(a).

19.     In the Underlying Action, EP Henry asserts, among other things, that:

- Cambridge's claims are false, deceptive, misleading, and have caused and continue to cause commercial harm to Plaintiff.

- Cambridge has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiffs business, reputation and goodwill, …

20.     EP Henry's claims allegedly arise from Cambridge's print advertisement, radio advertisement, television advertisement and website advertisement.

21.     In ongoing discovery in the Underlying Action, Cambridge served EP Henry with Requests for Admission that, among other things, requested EP Henry to admit that Cambridge had never made any disparaging remarks about EP Henry's business or products in any of its advertising, and also requested EP Henry to admit that Cambridge had never cast aspersions upon or made denigrating remarks about EP Henry's products or business in any of its advertising.

22.     EP Henry, in its Responses to Cambridge's Requests for Admission, refused to admit any of the foregoing, thereby confirming that it is EP Henry's position that the issue of

Cambridge's advertising disparaging, denigrating and casting aspersions upon EP Henry's products and business is a part of EP Henry's claims in the Action.

23. EP Henry's other discovery responses likewise confirm that EP Henry's claims include claims that Cambridge made disparaging remarks about EP Henry's products and business.

### The Travelers' Policies

24. Charter Oak issued a CGL policy to Cambridge, Policy No. Y-630-0642L093-CDF-09, for the policy period 06/07/09-06/07/10.

25. Travelers Indemnity issued a CGL policy to Cambridge, Policy No. Y-630-0642L093-TIA-10, for the policy period 06/07/10-06/07/11.

26. Both the Charter Oak policy and the Travelers Indemnity Policy provide Cambridge with coverage for "advertising injury" and "web site injury" (collectively, the Charter Oak policy and Travelers Indemnity policy are referred to as the "Travelers Policies").

27. Under the Web Xtend Endorsement to the Travelers Policies, the insuring agreement provides coverage as follows:

> This insurance applies to:
>
> (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
>
> (2) **"Advertising injury" caused by an offense** committed in the course of advertising your goods, products or services; or
>
> (3) **"Web site injury" caused by an offense** committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

-5-

but only if the offense was committed in the "coverage territory" during the policy period.

28. Under the Web Xtend Endorsement, the "coverage territory" is defined as:

    a.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.    International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c.    All parts of the world if the injury or damage arises out of:

        (1)    Goods or products made or sold by you in the territory described in a. above;

        (2)    The activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business; or

        (3)    "Personal injury", "advertising injury", and "web site injury" offenses that take place through the Internet or similar electronic means of communication; ...

29. Under the Web Xtend Endorsement, Coverage B. Personal Injury, Advertising Injury and Web Site Injury provides coverage for:

        (2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

        (3)    "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site"

30. "Advertising injury" is defined as:

"Advertising injury" means injury, arising out of one or more of the following offenses:

    a.    **Oral, written or electronic publication of material that** slanders or libels a person or organization or **disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization** that claims to have been slandered

or libeled, or **whose goods, products or services have allegedly been disparaged;**

b.   Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

c.   Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

31.   "Web site injury" is defined as:

"Web site injury" means injury, other than "personal injury" or "advertising injury", arising out of one or more of the following offenses:

a.   **Oral, written or electronic publication of material that** slanders or libels a person or organization or **disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization** that claims to have been slandered or libeled, or **whose goods, products or services have allegedly been disparaged;**

b.   Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life;

c.   Oral, written or electronic publication of material that violates a person's right of publicity, provided that claim is made or "suit" is brought by the person claiming rights of publicity; or

d.   Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

## The Liberty Policies

32.     LIC issued CGL policies to Cambridge, Policy No. YY7-Z11-260688-031/1, for the policy period 06/07/11 to 06/07/12, Policy No. TB2-Z11-260688-064, for the policy period 6/7/14 to 6/7/15, and Policy No. TB2-Z11-260688-065, for the policy period 6/7/15 to 6/7/16.

33.     Liberty Mutual Fire issue CGL policies to Cambridge, Policy No. YY2-Z11-260688-032, for the policy period 6/7/12 to 6/7/13, and Policy No. TB2-Z11-260688-063, for the policy period 6/7/13 to 6/7/14.

34.     LMI issued a CGL policy to Cambridge, Policy No. TB2-Z11-260688-066, for the policy period 6/7/16 to 6/7/17.

35.     The LIC, Liberty Mutual Fire and LMC policies provide Cambridge with coverage for "advertising injury" (collectively, the LMI policies, the Liberty Mutual Fire policies and the LMC policy are referred to as the "Liberty Policies").

36.     Under Coverage B, Personal and Advertising Injury, the "insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

37.     Under the Personal and Advertising Injury Amendment, "advertisement" is defined as follows:

> "Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>
> a.     Announcements that are published include material placed on the Internet or on similar electronic mean of communication; and
>
> b.     Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of

attracting customers or supporters is considered an advertisement.

38. Under the Personal and Advertising Injury Amendment, "personal and advertising injury" is defined as:

    a.    Injury, including consequential "bodily injury", to the feelings and reputation of a natural person (including mental anguish) caused by an offense arising out of your business, except injury arising out of:

        (1)    your "advertisement", or

        (2)    publishing, broadcasting or telecasting done by or for you.

    b.    injury, including consequential "bodily injury", arising out of one or more of the following offenses:

        (1)    False arrest, detention or imprisonment;

        (2)    Malicious prosecution or abuse of process;

        (3)    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        (4)    **Oral or written publication of material that** slanders or libels a person or organization or **disparages a person's or organization's goods, products or services**;

        (5)    Oral or written publication of material that violates a person's right of privacy;

        (6)    The use of another's advertising idea in your "advertisement"; or

        (7)    Infringing upon another's copyright, trade dress or slogan in your "advertisement"

39. Under the Liberty Policies, the "coverage territory" is defined as:

    a.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.    International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) **"Personal and advertising injury" offenses that take place through the Internet or similar electronic means** of communication provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

## Travelers' Wrongful Declination of Coverage

40.     Cambridge timely notified Travelers of its claim under the Travelers Policies.

41.     Travelers issued its declination of coverage by letter dated April 25, 2018.  In the April 25 letter, Travelers wrongfully determined that coverage was not available to Cambridge for the Underlying Action for the following reasons:

> Based on our review of the facts alleged and claims asserted in claimant's lawsuit and based on the coverage language, Travelers has determined that it has no obligation to indemnify or defend Cambridge in this matter under the referenced policy. As a threshold matter, there is no allegation of "bodily injury," "property damage," "personal injury" or "advertising injury" as those terms are defined in the policy.

> The basis for plaintiff's allegations against Cambridge is that Cambridge engaged in false and misleading marketing of its product. These allegations do not constitute an "occurrence" resulting in "bodily injury" or "property damage", as those terms are defined in the policy, and so do not trigger the Coverage A insuring agreement.

> Additionally, these allegations also do not meet any of the enumerated offenses giving rise to "personal injury" or "advertising injury" as defined in Coverage B of the policy.

> Because the allegations of the claim do not arise from an "occurrence" resulting in "bodily injury" or "property damage" and also do not fall within the "advertising injury," and/or "personal injury" insuring agreements under Coverage B, we unfortunately are unable to respond to the your request for coverage for this matter.

42.     Cambridge requested Travelers to reconsider its position by letter dated May 2, 2018.

43.     Travelers refused to withdraw its declination of coverage determination and reaffirmed that determination in its letter date May 22, 2018.

44.     By letter dated May 30, 2018, Cambridge advised Travelers that discovery conducted to date revealed that EP Henry was in fact alleging that Cambridge's advertising disparaged EP Henry's goods/products.  In that letter, Cambridge requested Travelers to reconsider its May 22 determination and provide coverage to Cambridge for the Underlying Action.

45.     Subsequent to Cambridge's May 30 letter, Travelers requested additional information that Cambridge provided.

46.     By letter dated August 13, 2018, Travelers again refused to withdraw its declination of coverage.

### Liberty's Wrongful Declination of Coverage

47.     Cambridge timely notified Liberty of its claim under the Liberty Policies.

48.     Liberty issued its declination of coverage by letter dated April 27, 2018.  In the April 27 letter, Liberty wrongfully denied coverage, stating:

> The Policies potentially apply to those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" as defined by the Policies. Since this matter seeks actual or alleged damages other than damages because of "personal and advertising injury," there is no insurance coverage

for those damages under Coverage B - Personal and Advertising Injury Liability.

Specifically, the Coverage B of the Policies provides coverage for damages the insured becomes legally obligated to pay arising out of the offense of oral or written publication of material that disparages a person's or organization's goods, products or services. Because Plaintiff does not seek damages as against Cambridge arising out of the oral or written publication of material that disparages Plaintiff's goods or products, there is no insurance coverage for the Lawsuit under Coverage B of the Policies.

Further, the Lawsuit does not involve damages because arising out of any of the other offenses included in the definitions of "personal and advertising injury" included in the Policies.

49.    Cambridge requested Liberty to reconsider its position by letters dated May 14, 2018 and June 22, 2018.

50.    Liberty refused to withdraw its declination of coverage determination and reaffirmed that determination by letter dated July 17, 2018.

### The Claims in the Underlying Action are Covered by the Travelers Policies and the Liberty Policies

51.    The allegations in the Underlying Action, together with EP Henry's discovery responses to date, demonstrate that the claims asserted against Cambridge in the Underlying Action constitute an "offense" for which there is coverage under the Travelers Policies and the Liberty Policies.

52.    Travelers and Liberty have wrongfully and unjustifiably denied covered for the claims asserted against Cambridge in the Underlying Action.

### COUNT ONE
### (Breach of Contract Against Travelers)

53.    Cambridge repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 52 of its Complaint.

54.     Cambridge complied with all of its obligations under the Travelers Policies, including but not limited to payment of premiums.

55.     In accordance with the provisions of the Travelers Policies, Cambridge, through its broker, notified Travelers of Cambridge's claim for coverage as a result of the Underlying Action.

56.     In accordance with the provisions of the Travelers Polices, Travelers was and is obligated to defend and indemnify Cambridge with respect to the Underlying Action.

57.     In accordance with the provisions of the Travelers Policies, Cambridge has fully cooperated with Travelers, including but not limited to providing Travelers with documentation and information.

58.     Travelers has wrongfully refused to defend and indemnify Cambridge in connection with the Underlying Action.

59.     Travelers conduct constitutes a material breach of the contract of insurance between Cambridge and Travelers.

60.     As a direct and proximate result of Travelers material breach of the contract of insurance, Cambridge has suffered and will continue to suffer substantial damages.

**WHEREFORE,** Cambridge demands judgment against Travelers for:

(a)     Compensatory damages;

(b)     Costs of suit;

(c)     Attorneys' fees; and

(d)     Such other and further relief that the Court deems just and equitable.

## COUNT TWO
### (Declaratory Judgment for Defense and Indemnification Against Travelers)

61.     Cambridge repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 60 of its Complaint.

62.     There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication.

63.     The Travelers Policies required Travelers to provide Cambridge with a defense and indemnification with respect to the Underlying Action.

64.     Travelers has wrongfully denied coverage under the Travelers Policies.

65.     Travelers' conduct constitutes a substantial and material breach of the Travelers Policies.

66.     A declaratory judgment is appropriate and warranted at this time to determine the rights of the parties and to prevent unnecessary damages to Cambridge.

WHEREFORE, Cambridge demands judgment, pursuant to the Uniform Declaratory Judgment Law, N.J.S.A. 2A:16-50, *et seq.*, against Travelers as follows:

(a)     Declaring that Travelers must:

(i)     reimburse Cambridge for all fees (including attorneys' fees and expert fees), costs and expenses incurred by Cambridge in connection with the defense of the Underlying Action;

(ii)     pay for all costs, fees and expenses incurred by Cambridge in connection with the ongoing defense of the Underlying Action; and

(iii)     completely and fully indemnify Cambridge with respect to the Underlying Action;

(b)     Awarding Cambridge attorneys' fees pursuant to Rule 4:42-9;

(c)     Awarding Cambridge costs of suit;

(d)     Awarding Cambridge such other and further relief as the Court deems equitable

and just.

## COUNT THREE
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Travelers)

67.     Cambridge repeats, reiterates and realleges each and every allegation contained in

Paragraphs 1 through 66 of its Complaint.

68.     The law requires that insurance companies act in good faith, abstain from

deception and practice honesty and equity in their dealings with their policyholders.

69.     The Travelers Policies have, as part of their terms, an implied covenant of good

faith and fair dealing.

70.     Under the Travelers Policies and in accordance with well settled law, Travelers is

obligated to deal with Cambridge fairly and in good faith.

71.     Travelers has breached its duty of good faith and fair dealing by and among other

things refusing to provide coverage to Cambridge for the Underlying Action.

72.     Travelers' conduct was calculated to further its own economic interest at the

expense of Cambridge.

73.     Travelers' conduct constitutes a material breach of the covenant of good faith and

fair dealing.

74.     As a direct and proximate result of Travelers' breach of the covenant of good faith

and fair dealing, Cambridge has suffered and will continue to suffer substantial damages.

WHEREFORE, Cambridge demands judgment against Travelers for:

(a)     Compensatory damages;

(b)     Costs of suit;

(c)     Attorneys' fees pursuant to Rule 4:42-9; and

(d)     Such other and further relief as the Court deems equitable and just.

## COUNT FOUR
### (Breach of Contract Against Liberty)

75.     Cambridge repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 74 of its Complaint.

76.     Cambridge complied with all of its obligations under the Liberty Policies, including but not limited to payment of premiums.

77.     In accordance with the provisions of the Liberty Policies, Cambridge, through its broker, notified Liberty of Cambridge's claim for coverage as a result of the Underlying Action.

78.     In accordance with the provisions of the Liberty Polices, Liberty was and is obligated to defend and indemnify Cambridge with respect to the Underlying Action.

79.     In accordance with the provisions of the Liberty Policies, Cambridge has fully cooperated with Liberty, including but not limited to providing Liberty with documentation and information.

80.     Liberty has wrongfully refused to defend and indemnify Cambridge in connection with the Underlying Action.

81.     Liberty conduct constitutes a material breach of the contract of insurance between Cambridge and Travelers.

82.     As a direct and proximate result of Liberty material breach of the contract of insurance, Cambridge has suffered and will continue to suffer substantial damages.

**WHEREFORE**, Cambridge demands judgment against Liberty for:

(a)     Compensatory damages;

(b)     Costs of suit;

(c)     Attorneys' fees; and

(d)     Such other and further relief that the Court deems just and equitable.

**COUNT FIVE**
**(Declaratory Judgment for Defense and Indemnification Against Liberty)**

83.     Cambridge repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 82 of its Complaint.

84.     There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication.

85.     The Liberty Policies required Liberty to provide Cambridge with a defense and indemnification with respect to the Underlying Action.

86.     Liberty has wrongfully denied coverage under the Liberty Policies.

87.     Liberty's conduct constitutes a substantial and material breach of the Liberty Policies.

88.     A declaratory judgment is appropriate and warranted at this time to determine the rights of the parties and to prevent unnecessary damages to Cambridge.

WHEREFORE, Cambridge demands judgment, pursuant to the Uniform Declaratory Judgment Law, N.J.S.A. 2A:16-50, *et seq.*, against Liberty as follows:

(a)     Declaring that Liberty must:

(i)     reimburse Cambridge for all fees (including attorneys' fees and expert fees), costs and expenses incurred by Cambridge in connection with the defense of the Underlying Action;

(ii)     pay for all costs, fees and expenses incurred by Cambridge in connection with the ongoing defense of the Underlying Action; and

-17-

(iii)    completely and fully indemnify Cambridge with respect to the Underlying Action;

(b)    Awarding Cambridge attorneys' fees pursuant to Rule 4:42-9;

(c)    Awarding Cambridge costs of suit;

(d)    Awarding Cambridge such other and further relief as the Court deems equitable and just.

**COUNT SIX**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Liberty)**

89.    Cambridge repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 88 of its Complaint.

90.    The law requires that insurance companies act in good faith, abstain from deception and practice honesty and equity in their dealings with their policyholders.

91.    The Liberty Policies have, as part of their terms, an implied covenant of good faith and fair dealing.

92.    Under the Liberty Policies and in accordance with well settled law, Liberty is obligated to deal with Cambridge fairly and in good faith.

93.    Liberty has breached its duty of good faith and fair dealing by and among other things refusing to provide coverage to Cambridge for the Underlying Action.

94.    Liberty's conduct was calculated to further its own economic interest at the expense of Cambridge.

95.    Liberty's conduct constitutes a material breach of the covenant of good faith and fair dealing.

96.    As a direct and proximate result of Liberty's breach of the covenant of good faith and fair dealing, Cambridge has suffered and will continue to suffer substantial damages.

WHEREFORE, Cambridge demands judgment against Liberty for:

(a)    Compensatory damages;

(b)    Costs of suit;

(c)    Attorneys' fees pursuant to Rule 4:42-9; and

(d)    Such other and further relief as the Court deems equitable and just.

Dated: August 15, 2018                    CARELLA, BYRNE, CECCHI,
                                          OLSTEIN, BRODY & AGNELLO, P.C.


                              By:   _/s/ John M. Agnello_____
                                    JOHN M. AGNELLO
                                    MELISSA E. FLAX
                                    CHRISTOPHER J. BUGGY


## JURY DEMAND

Cambridge demands a trial by jury on all issues so triable.


Dated: August 15, 2018                    CARELLA, BYRNE, CECCHI,
                                          OLSTEIN, BRODY & AGNELLO, P.C.


                              By:   _/s/ John M. Agnello_____
                                    JOHN M. AGNELLO
                                    MELISSA E. FLAX
                                    CHRISTOPHER J. BUGGY

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court in this jurisdiction, or of any pending arbitration or administrative proceeding, other than *EP Henry Corporation v. Cambridge Pavers, Inc.*, United States District Court, District of New Jersey, Civil Action No. 1:17-cv-1538(JBS)(KMW). I know of no other parties who should be joined in the action at this time.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

Dated: August 15, 2018       By:    */s/ John M. Agnello*
                              JOHN M. AGNELLO
                              MELISSA E. FLAX
                              CHRISTOPHER J. BUGGY

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005978-18

**Case Caption:** CAMBRIDGE PAVERS, IN C. VS LIBERTY
INSURANCE CO
**Case Initiation Date:** 08/15/2018
**Attorney Name:** JOHN M AGNELLO
**Firm Name:** CARELLA BYRNE CECCHI OLSTEIN BRODY
& AGNELLO PC
**Address:** 5 BECKER FARM RD
ROSELAND NJ 070681738
**Phone:**
**Name of Party:** PLAINTIFF : Cambridge Pavers, Inc.
**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Hurricane Sandy related?** NO
**Is this a professional malpractice case?** NO
**Related cases pending:** YES
**If yes, list docket numbers:** United States District Court, District of
New Jersey Civil Action No. 1:17-cv-1538(JBS)(KMW)
**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/15/2018
Dated

/s/ JOHN M AGNELLO
Signed